NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 9, 2020
Decided January 24, 2020

Before

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 19-1709

| | |
|---|---|
| LEVAN GALLERIES LLC, *et al.*,<br>    *Plaintiffs-Appellants*,<br><br>    *v.*<br><br>CITY OF CHICAGO, *et al.*,<br>    *Defendants-Appellees*. | Appeal from the United States<br>District Court for the<br>Northern District of Illinois,<br>Eastern Division.<br><br>No. 18-cv-4580<br><br>Sara L. Ellis, *Judge*. |

**O R D E R**

In 2012, Jemal Hancock tried to retain Sotheby's services to sell his art collection. He visited the Sotheby's Chicago office twice in two years and provided nearly 2,000 photographs of the pieces that he wished to sell. The Chicago office employees told Hancock that they would send the photographs to New York, where Sotheby's would assess whether the collection was worth selling. Four years later, Hancock still had not heard back. Frustrated, he began

writing emails to two Sotheby's executives, inquiring about the company's disparate treatment of African Americans. The executives informed the Chicago office that they were being harassed; in response, Sotheby's hired two off-duty police officers for security. One afternoon, the security guards called the police station to report that Hancock had trespassed on Sotheby's property. After investigating, the officers who responded to the call filed a police report in which they suggested that Sotheby's seek a protective order—which it did, but a state court declined to issue one.

Hancock then filed multiple lawsuits against Sotheby's, the officers, and the City of Chicago, all of which were dismissed by the district court. In the action that is the subject of this appeal, Hancock sued the security guards, the officers who responded to their call, and the City on the theory that the police report deprived him of his Fourteenth Amendment Due Process and Equal Protection rights. Hancock characterizes the police report as a de facto protective order and says that this "order" was entered because of his race and in violation of his due process rights. The district court dismissed Hancock's suit for failure to state a claim, a judgment that he asks us to reverse.

I.

At the outset, it is worth noting that Hancock mistakes the pleading standard under Federal Rule of Civil Procedure 8(a). He states that the standard for dismissal for failure to state a claim is *Conley v. Gibson*'s "no set of facts" test. 355 U.S. 41, 45–46 (1957). But the modern standard is, of course, plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And the district court was correct that Hancock's claims are not remotely plausible on the facts alleged.

Hancock's equal protection claim has several problems, but it suffices to address one: Hancock fails to plausibly allege that the officers discriminated against him. To maintain an equal protection claim, "plaintiffs must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001). Critically, it must be the government, not a private entity, that undertook the discriminatory action. *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1991) ("Racial discrimination, though invidious in all contexts, violates the Constitution only when it may be attributed to state action."). Here, Hancock asserts that the two Sotheby's executives acted on the basis of racial animus when they hired security guards to protect the Chicago office from him. But he

does not allege that the relevant state actors—the officers who filed the police report—did so "at least in part 'because of' … its adverse effects upon an identifiable group." *Alston v. City of Madison*, 853 F.3d 901, 907 (7th Cir. 2017) (citation omitted). Without an allegation that the police officers were motivated by his race, Hancock's equal protection claim can't get off the ground.

His due process claim fares no better. The Fourteenth Amendment requires the state to provide fair procedures when it deprives someone of life, liberty, or property. "[A] violation of the Fourteenth Amendment does not occur unless a person is 'deprive[d] ... of life, liberty, or property, without due process of law.'" *Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012) (alteration in original) (quoting U.S. CONST. amend. XIV, § 1). Hancock maintains that the police report deprived him of liberty because it functions as a de facto no-contact order that prohibits him on pain of legal penalty from going near Sotheby's. Yet unlike a formal protective order, which carries criminal penalties for its violation, *see* 740 ILCS 21/125, a police report has no legal effect whatsoever. And Hancock alleges no facts supporting an inference that this was anything other than an ordinary police report. (Indeed, if this report functioned as a no-contact order, it's unclear why Sotheby's would go through the trouble of seeking an actual protective order, as Hancock alleges it did.) Hancock assures us that the police would treat the report as a protective order if he ever went near Sotheby's again. But that is pure speculation, not a plausible inference from the facts he alleges.

II.

Hancock argues in the alternative that the district court should have granted him leave to amend his complaint to cure its defects. When a district court grants a motion to dismiss the original complaint, a plaintiff "no longer ha[s] a right to amend h[is] complaint as a matter of course." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015); *see* FED. R. CIV. P. 15(a)(1). A "court should freely give leave" to amend "when justice so requires," FED. R. CIV. P. 15(a)(2), yet it has "broad discretion" to decide whether to allow amendment and may refuse "in cases of undue delay, bad faith or dilatory motives, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice or futility," *Garner v. Kinnear Mfg. Co.*, 37 F.3d 263, 269 (7th Cir. 1994).

Hancock referenced the possibility of amendment very briefly in his opposition to the defendants' motion to dismiss. We recently addressed how

courts should treat such a request. In *Chaidez v. Ford Motor Co.*, the plaintiffs requested leave to amend in a single, short sentence in their brief opposing the defendant's motion to dismiss. 937 F.3d 998, 1008 (7th Cir. 2019) (affirming in relevant part). The plaintiffs did not file an independent motion to amend either before or after the court entered judgment. We held that such a brief statement, standing alone, "provid[ed] no grounds for amendment or explanation of how an amended complaint would cure the defects of their original complaint." *Id.*

Hancock's request to amend is nearly identical to that of the plaintiffs in *Chaidez*. It consists of nothing more than two conclusory sentences—one in each of the two briefs he submitted opposing the defendants' motions to dismiss. He "request[ed] [that] the Court grant leave to amend the complaint" if it decided to grant the motion to dismiss, without offering any explanation of how amendment would correct the errors in his complaint. As in *Chaidez*, the district court did not abuse its discretion in refusing to grant Hancock leave to amend.

AFFIRMED